UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

— — —

CITY OF DETROIT,

     Plaintiff,

  v.                       Case No. 24-10775

UNITED STATES DEPARTMENT OF      Hon. Matthew F. Leitman
COMMERCE, et al.,

     Defendants.      *(Hearing conducted*
                                *virtually using Zoom*
_____/  *Video Communications)*

STATUS CONFERENCE

BEFORE THE HONORABLE MATTHEW F. LEITMAN
United States District Judge
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan
Friday, May 10, 2024

APPEARANCES:

For the Plaintiff:     DAVID H. FINK
                     PHILIP DAVID MILLER
                     FINK BRESSACK, PLLC
                     38500 Woodward Avenue, Suite 350
                     Bloomfield Hills, MI 48304
                     (248) 971-2500

For the Defendants:    CHRISTIAN DANIEL
                     STEPHEN MICHAEL PEZZI
                     U.S. DEPARTMENT OF JUSTICE
                     1100 L Street NW
                     Washington, DC 20005
                     (202) 305-8576

*To obtain a copy of this official transcript, contact:*
*Robert L. Smith, Federal Official Court Reporter*
*(313) 234-2612 • robert_smith@mied.uscourts.gov*

1

TABLE OF CONTENTS

2

MATTER                                                            PAGE

3

STATUS CONFERENCE.................................... 3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   Detroit, Michigan *(Remote proceedings)*

2   Friday, May 10, 2024

3   at about 2:01 p.m.

4                             —   —   —

5           (Court and Counsel present via Zoom Video

6            Communications.)

7           THE LAW CLERK:  The United States District Court

8   for the Eastern District of Michigan is now in session, the

9   Honorable Matthew F. Leitman, United States District Judge,

10  presiding.

11          The Court calls Case No. 24-10775, Detroit v.

12  United States Department of Commerce, et al.

13          Counsel, please state your appearances for the

14  record.

15          MR. FINK:  David Fink appearing for plaintiff.  And

16  for the benefit of Mr. Smith, I would like to explain that

17  when I speak and when Phil speaks, the sound will be coming

18  through my computer, so it won't be possible, in looking at a

19  recording -- if it is checked later, it won't be possible to

20  see the difference, based on which screen is lit; it's a long

21  way of saying, David Fink.

22          THE COURT:  And Mr. Miller is with you, Mr. Fink?

23          MR. MILLER:  I am, yes, Your Honor.  Philip Miller

24  for City of the Detroit.

25          THE COURT:  Are you in the same room with him,

1  Mr. Miller?

2          MR. MILLER:  Yes, Your Honor.

3          THE COURT:  Can you -- when it comes time for you

4  to speak, will you go closer?  It is a little bit hard to

5  hear.

6          MR. MILLER:  I will, Your Honor.

7          MR. FINK:  He can move closer right now.

8          THE COURT:  All right.  Who is going to be speaking

9  for the government?

10          MR. DANIEL:  Good morning, Your Honor.  This is

11  Christian Daniel, with the Department of Justice, on behalf

12  of defendants.  I'm here with my co-counsel, Steve Pezzi, as

13  well.

14          THE COURT:  All right.  Mr. Daniel, will you be the

15  one speaking?

16          MR. DANIEL:  Yes, Your Honor.

17          THE COURT:  What I wanted to do is get together

18  today and talk about the current dispute over the schedule.

19  So the City filed the complaint and then followed that up

20  with a motion for partial summary judgment on Count 1, a

21  count under the APA.  And the government has filed a motion

22  to basically to extend the schedule.

23          And, Mr. Daniel, I just had a couple questions.

24          Aside from the case law and stuff, as a practical

25  matter, is there prejudice to the government and the

 1    defendants of proceeding with the current motion?

 2          MR. DANIEL:  Yes, Your Honor, for two reasons.  The

 3    first is the agency has been working diligently, since the

 4    complaint was filed, to put the administrative record

 5    together, but that takes time.  It's not just sitting on a

 6    shelf.  They have to analyze the complaint, do searches back

 7    through years, or even decades, of files and determine what

 8    needs to constitute the administrative record.  So it's just

 9    not feasible for the agency to find every possibly relevant

10    document quickly enough, prior to its responsive pleading

11    deadline, in order for counsel to rely on those documents in

12    its response to plaintiff's motion.

13          Moreover, for general party and judicial economy,

14    defendants believe that it doesn't make sense to do piecemeal

15    summary judgment on plaintiff's claims one by one, but rather

16    it would make much more sense to brief them all at same time,

17    once there is an administrative record.

18          THE COURT:  All right.  Mr. Fink, what about the

19    government's point that it takes time to assemble the

20    administrative record and this is a, potentially, big

21    project?

22          MR. FINK:  Well, let me -- thank you, Your Honor.

23    I'd like to speak both to that and to the issue of prejudice.

24          Regarding taking time to complete the record, we

25    have already indicated that we're prepared to agree to

 1   a 21-day extension, which would mean -- they've told us they

 2   have will the record for us by May 31st.  They've indicated

 3   that.  So we've suggested an extension 12 days past that

 4   date, so they will be able to use that time to file their

 5   response and to reference that administrative record.

 6          I can't -- I -- we, the City of Detroit, has no way

 7   of second guessing the federal government on how long it

 8   takes them to put the administrative record together.  We

 9   respect that.  But if they can have the record by

10   May 12th -- May 31st, I don't see how they're harmed if they

11   have 12 more days after that.  Most of the relevant parts of

12   the administrative record, we think we have already submitted

13   as exhibits in our motion or otherwise referenced in the

14   complaint.  I don't think it's going to be hard for them to

15   find it, but I can't speak for that, I could be wrong.

16          The issue of prejudice, though, is a significant

17   question, because the federal government -- I don't see how

18   the federal government is prejudiced if they've got 12 days

19   to respond to our motion, which is on only one count of the

20   complaint, and, in contrast, the City of Detroit, every

21   single day that goes by, might be costing the city money,

22   because we -- the way the funding works -- and I'm not going

23   to get too deep into this, but the way that the funding

24   works, we're talking about not one or two allocations, we're

25   talking about dozens of different federal and state programs

1    that are funded, based upon population estimates.  And they

2    are not -- and it's not -- there isn't a fixed point in time,

3    one time a year, a year when all of that's done; it's an

4    ongoing matter.  And we don't know when we're -- the

5    limitation occurs.  I guess that's an odd way to say it, but

6    we can't say that we know that today, and that's why we

7    didn't bring a motion for preliminary injunction.  Because it

8    gets a little bit complicated to say this is that point in

9    time.

10          We know that, at some point, different agencies

11   distribute funds based on various funding formulas and make

12   allocations based on those formulas, and we can't go back,

13   once we get past that, because you're dealing with

14   allocations of funds across the United States and across the

15   state of Michigan.

16          So I may be speaking too long on that point, but we

17   feel we're prejudiced by delay, but we respect the fact that

18   the federal government can only move so quickly, and we're

19   trying to accommodate them.  So while the response on -- in

20   the ordinary course of events, the response would have been

21   due on May 22nd, but we've already said that we'll agree to

22   extend to June 12th.

23          THE COURT:  All right.  Let me just break this down

24   into really simple questions.

25          First, Mr. Daniel, it was a while ago that I looked

 1    at these motions.  Is it accurate that your position is that

 2    you will have the full administrative record prepared by

 3    May 31st?

 4         MR. DANIEL:  That is when the agency anticipates

 5    having the record ready, Your Honor, yes.

 6         THE COURT:  Okay.  Mr. Fink, let me come back to

 7    you and ask about the litigation perspective of taking these

 8    things seriatim, instead of all at once.

 9         If you bring this motion on Count 1 now, and you

10    win -- obviously, that's an assumption, I don't know anything

11    about the merits of this case.  But let's say you win on that

12    basis.

13         MR. FINK:  Yeah, let's say that.

14         THE COURT:  Under your view, then, there would have

15    to be some sort of recalculation of the City's share of the

16    government funds.  Then later on, you bring a motion on

17    Count 2, let's say you win on that, then we recalculate

18    again.  Isn't the most efficient way to handle this to give

19    you a single shot, we resolve all of your claims at once, and

20    there is a single mathematical recalculation, if you win,

21    that factors in and accounts for exactly how much you've won

22    and how much you haven't won?

23         MR. FINK:  The -- I respect the Court's question,

24    but it incorporates some assumptions that I think are

25    probably not valid, and that is, we don't yet anticipate that

```
 1    direct funding will come from the decision.  What we
 2    anticipate is, as these decisions are made, new population
 3    estimates will come from the government or be ordered to be
 4    issued by the government.  Those population estimates may or
 5    may not affect actual funding, in a short term.  It might be
 6    a longer term before the funding is affected.  But what is
 7    affected immediately is the reputational harm that the City
 8    has suffered due to -- and continues to suffer due to the
 9    false, we believe, the false impression that comes from these
10    faulty population estimates.
11          So -- but let me -- but let me break down the
12    issue.  We have three separate counts -- we have four counts,
13    but we have three separate issues that we are bringing to the
14    Court regarding what we believe to be arbitrary and
15    capricious decisions by the Census Bureau, and they are quite
16    distinguishable.
17          First, the issue of how they handle demolitions,
18    which is what we brought on this motion.  The second issue is
19    a little more complex and it relates to how they handle
20    non-permitted new construction in the city, and that's
21    complicated by a couple of issues; one relates to the way the
22    department treats cities that do issue permits versus cities
23    that don't issue permits.  And, second, in order to get to
24    that second count of our complaint, we get to an issue of the
25    use of administrative records, et cetera.  And we -- I don't
```

1   want to go too far; I've probably already gone probably too

2   far into that.

3           The third issue is something called the county

4   control or county cap, and that issue requires the Court to

5   get into some historical activities by the agency and how

6   they ended up creating this cap.  So there are three

7   distinguishable matters, but what we don't anticipate is that

8   as we -- assuming we win each of these three things, we don't

9   anticipate that we win and then, immediately, new funds are

10  allocated to the City.  What we anticipate is that we win and

11  then, eventually, when the agencies come around to the timing

12  for when they are distributing funds, those agencies, who are

13  innocent third-parties -- I don't know if you call them

14  third-parties, but those federal agencies would then be

15  addressing -- would be looking at different numbers than

16  they'd otherwise look at.

17          THE COURT:  But, look, if you win -- if you win

18  seriatim, you know, one at a time, am I still understanding

19  that the first win would cause the Census Bureau to have to

20  do some sort of recalculation?

21          MR. MILLER:  Absolutely.

22          THE COURT:  And then that would end; and then we

23  would do motion number two, and they would do a second

24  calculation; and then motion number three would be a third

25  calculation.  So my question is really just a different

```
 1    context.  Instead of different funding allocations, if we
 2    take these one at a time and you win, the agency is doing
 3    several different mathematical calculations; if we took them
 4    all at once and we figured out which ones, if any, you win on
 5    and which ones you lose on, there would be a single
 6    calculation that would capture all of your victory if you won
 7    on any claims; is that correct?
 8         MR. FINK:  Yes, that is correct, and I would point
 9    out, though, that the first issue -- if we win on demolition,
10    the calculation is a one-page calculation that somebody can
11    do in 15 minutes, and I'm not overstating that.  I mean, they
12    will want to go through some other measures, but it is just,
13    how do you treat a certain set of numbers they already have.
14    And it -- so I don't see it as a burden on the agency to have
15    to calculate three times.
16         Now, I'd also say, I'm not sure we would do this as
17    three motions.  When this motion is completed, we probably
18    then would go to a full resolution on the merits of the total
19    package that remains after that, but we haven't -- the Court
20    would have to look to that and decide how it wanted to
21    address it.
22         THE COURT:  Mr. Daniel, I'm working from home today
23    and I don't have your motion in front of me, but your
24    proposal is to complete the administrative record by the end
25    of this month and then, remind me, to do what?
```

```
 1          MR. DANIEL:  So after that, plaintiff would be free
 2   to file a renewed motion for summary judgment at any time.  I
 3   mean, they could file it the same day, if they wanted,
 4   although, I assume they would want time to look at the
 5   record, which is why we are here in the first place.  But
 6   they can file it at any time, and after that, defendants
 7   would have 30 days to both file a unified response and a
 8   cross motion for summary judgment, and then there would be
 9   another 30 days for plaintiff to file their cross response
10   and reply, and then 15 days, at the end, for the defendant to
11   file its cross reply.
12          THE COURT:  Mr. Fink, that seems like a pretty
13   compressed schedule that, in the big scheme of things, is not
14   all that different from your proposed schedule.
15          MR. FINK:  Well, Your Honor, here's the -- as we
16   see the difference, what they're talking about is essentially
17   a 75-day briefing schedule that begins May 13th.  And I -- I
18   mean, May 31st.  We're talking about is essentially about a
19   three-week schedule between their 12 days and our week or so
20   to respond, to get to a -- a decision -- an opportunity for
21   the Court to address a very important part of the case, so
22   that we could conceivably have a positive outcome, if we
23   prevailed, in a matter of maybe two months from now.  Look,
24   it may be a little longer, just in terms of the Court's
25   schedule.
```

1     But their schedule actually adds about two months

2 before we would get -- we could possibly get to judgment.

3 And every day counts to the City.  It's a very -- and just to

4 be clear, one of the things -- and maybe I haven't been clear

5 about this, our concern about the census count and the

6 population estimates involves many components, but the most

7 important ones are, one, of course, the actual allocation of

8 funding which, we don't know, it is like a black box, we

9 don't know when it is done or how it is done, we know it is

10 just done.

11     But the other thing is, the City is trying to

12 project an accurate message to the public and to potential

13 investors in the City, that we are growing, and because the

14 Census Bureau has decided that 8,000 people moved out of the

15 City, because we demolished 4,000 residences which were

16 unoccupied, because of that message, we literally -- the

17 demolitions are the difference between the City growing and

18 contracting, in terms of the public message.  So we're very

19 sensitive to getting the public message out as quickly as

20 possible, that the City is not losing population.  We have

21 more utility hookups, we have more people paying taxes, we

22 have more people paying -- buying -- getting water from our

23 water system, and Detroit Edison gets more.  So we want that

24 message to be consistent, and every day that goes by is a day

25 that we care about.  That's why the City asked us to file

 1    this right away.  That's why they asked us to pick off this
 2    one issue.  That's why we drafted the complaint the way we
 3    did, with separate counts, so that we could address this
 4    demolition issue, because it's the single -- well, I don't
 5    want to get to the merits, but it's an unusual issue that we
 6    think can be disposed of summarily.

 7          We also think it's possible that when the Census
 8    Bureau closely reviews what we have presented, they may
 9    change their mind on this subject.  We are hoping that they
10    do.  We don't want to delay the time when they have to do
11    that or consider that.

12          THE COURT:  What has the City done, outside of this
13    lawsuit, to get the Census Bureau to look at this?  And I say
14    that in all seriousness, in the sense that the City is very
15    persuasive, they have a lot of persuasive advocates in
16    Congress, they have a very good relationship with the
17    President of the United States.  Have these other avenues
18    been undertaken?

19          MR. FINK:  Yes, and, in fact, to some extent,
20    successfully.  That is, we are trying to work more
21    cooperatively and closely with the bureau through the state
22    demographer.  And by the way, a couple years ago, I didn't
23    know there was such a thing as state demographer.  But we
24    work with the state demographer, who provides certain data
25    that the Census Bureau relies on.  State demographer also has

1     gotten information for us, appropriately, through

2     the -- through their contact with the Census Bureau.  And

3     through legislative means, we have reached out to the -- our

4     congregational representatives, including Senator Peters, and

5     they have, in fact, added language to the last appropriations

6     bill that explicitly -- I don't know if the Court is familiar

7     with boilerplate in appropriations, but although Congress

8     binds agencies through authorizations in appropriations, when

9     they're really only funding things they previously

10    authorized, Congress sometimes adds boilerplate -- what they

11    call boilerplate language in their reports, saying, this is

12    what we want the agency to do.  And we did persuade -- or I

13    shouldn't say we, but through our working with the -- with

14    our representatives and some cooperation in various different

15    ways, we did get that language added to the last

16    appropriation bill, saying, for example, that administrative

17    records should be relied on more, when possible.  They would

18    like the agency -- I don't wanna -- I'm just paraphrasing, so

19    I apologize for that.  But that the bureau should look to

20    reliable administrative records to try to make the population

21    estimates more accurate.

22          Now we work with, and we didn't previously, we

23    worked very actively with the Federal State Cooperative for

24    Population Estimates, and through that, one very positive

25    thing that has occurred is, we learned why they were

1    underestimating the amount of our permitted construction.

2    And in the last round of population estimates, there were

3    some permits that were not accepted, and now they are being

4    accepted, so we are making progress.

5           This one subject of demolition, so far at least, we

6    have not been able to persuade the bureau.  And to be clear,

7    we have reached out to counsel and asked counsel when they

8    asked for more time, we -- we agreed to more time, in part

9    because we said we hope that this time can be used by the

10   bureau, because the bureau is about to issue its next set of

11   population estimates next week.  Literally, next week, a new

12   round of estimates it going to come out.  And when they do

13   what's called the 2000 -- the vintage 2023 estimates, which

14   are done in 2024, when they release the 2023 -- the

15   vintage 2023 estimates, they will also issue any corrections

16   that they find to the 2021 and 2022 estimates.

17          And we've been working with them and hoping that

18   they will, among other things, consider this, our brief,

19   frankly, in this case, regarding demolition and factor that

20   into those estimates.  And, by the way, if they do, they

21   could end up mooting this motion.

22          But -- so, yes, Your Honor, we are pursuing -- we

23   have reached out -- not counsel, but the City, through

24   appropriate means, has reached out to the agency, including

25   the director of the commerce department -- the secretary of

 1    commerce, I'm sorry, and we're doing the best we can, through

 2    every means we have available to us.  But time is -- time is

 3    of the essence, and we would really like to have this one

 4    issue teed up and considered by the Court as soon as

 5    possible.

 6            THE COURT:  Okay.  I think I've got a picture of

 7    what is going on here.  I appreciate the arguments.  What I'm

 8    going to do is move this forward in a way that I think is

 9    respectful of the City's legitimate need to move ahead with

10    reasonable speed, but also is, in my view, the most efficient

11    way to resolve this.

12            So what I'm going to do is not grant all of the

13    relief that the government seeks, but adopt a schedule where

14    we take this all at once.  So the government will file the

15    administrative record -- compile it and file it, in full, by

16    the May 31st date.  I'm going to terminate, without

17    prejudice, the pending motion for summary judgment.  All

18    motions for summary judgment, cross and otherwise, will be

19    filed by June 20th.  Responses by July 11th.  Replies by

20    July 25th.  And I will, to the best of my ability, move this

21    for a hearing date sooner than it otherwise will be.  So we

22    will all compromise and adjust our schedules and understand

23    that we're balancing a number of different factors here and

24    this strikes me as the most appropriate way to proceed.

25            So I'll enter a short order confirming this.  It

1    sounds like a very interesting case.

2          Mr. Fink, will you let us know, right away, if what

3    comes out next week ends up mooting or mooting any part of

4    your complaint or requiring any sort of an amendment or

5    anything like that, expanding or mooting?  Just let us know

6    if anything needs to be done with that.

7          MR. FINK:  We will, Your Honor, yes.

8          THE COURT:  All right.  Mr. Fink, anything else on

9    behalf of the City today?

10         MR. FINK:  No, Your Honor.  Thank you.

11         THE COURT:  Mr. Daniel?

12         MR. DANIEL:  Yes, one thing, Your Honor.  We

13   requested in our motion that the Court waive our obligation

14   to file an answer on May 31st, so that we could produce this

15   record on that date and move forward to summary judgment.  We

16   believe that the parties can brief those summary judgment

17   motions fully on the basis of the record, and that filing an

18   answer would just take up the agency's time that it could

19   otherwise use in producing this record, without any benefit

20   for this litigation.

21         THE COURT:  I saw that the City said that it's

22   important to understand precisely what the defendant's

23   position is.  I mean, filing an answer is generally in the

24   ordinary course of litigation, isn't it?  I mean, I've got to

25   confess, I don't sit in the District of Columbia, so I don't

*1*   see a ton of APA cases, but aren't answers ordinarily filed

*2*   in APA cases just like in other cases, or no?

*3*        MR. DANIEL:  Sometimes, Your Honor, but we often do

*4*   request that answers get waived, and courts often do grant

*5*   that, because, generally, they are resolved in this same way,

*6*   which is, there's cross motions for summary judgment based on

*7*   the administrative record and that resolves all claims in the

*8*   case and that's the end, so the answer is, ultimately, not

*9*   needed.

*10*       I did see plaintiff's response where they said that

*11*   an answer would be helpful, but I was unable to gather from

*12*   their response why they thought that would be the case, which

*13*   parts of the complaint they thought, if answered, would move

*14*   the litigation forward in a different way than otherwise.  So

*15*   our position is still that it would just be more efficient to

*16*   move straight into summary judgement, without an answer.

*17*        THE COURT:  Mr. Fink.

*18*        MR. FINK:  Yes, yes.  Thank you.  Until we see the

*19*   answer, we don't know if it will be helpful, but we do

*20*   believe, especially with the now shortened timeframe for our

*21*   ultimate motions for summary judgment on all matters, it

*22*   would be extremely helpful for us to have that response.  We

*23*   make a lot of allegations in our complaint, and we believe

*24*   that they are all true, but some are based on our inferences

*25*   about what the agency is doing, why the agency is doing it.

1  The agency's response is critically helpful to us -- could be

2  helpful.  They may deny some of the things that we take as

3  articles of faith, that we're certain that's what they are

4  doing.  They may admit some of the things that are important

5  to our ability to explain what the agency is doing.

6        The court rules don't create an exception for

7  Administrative Procedures Act cases for answers.  I have

8  never seen an exception for it.  And certainly, there are

9  some instances where there's absolutely no disagreement of

10 fact and so the parties say, we don't need any -- we don't

11 need to have an answer.  And they asked us, graciously, at

12 the beginning, if we would be willing to give them -- to not

13 seek an answer.  They weren't impolite about it; they were

14 appropriate about it.  But from our perspective, we look

15 forward to an answer, because if one or two things are

16 admitted that are helpful to us in one of our three

17 substantive areas, that's important to us.  And in an

18 administrative procedure, where you don't have traditional

19 discovery, you don't have the ability, otherwise, to address

20 some of these factual issues, the answer could be extremely

21 helpful to us and extremely important.

22        And, by the way, it also might not be helpful to

23 us.  We may find out that there's matters at issue that we

24 don't know are at issue, that we don't expect to be in

25 dispute; but we need to know.  I don't know what they agree

1    with.

2            THE COURT:  All right.  I'm persuaded that an

3    answer could help even streamline the summary judgment

4    briefing, even if it just eliminates a few things that the

5    plaintiff don't have to spend time trying to establish.

6            So I will have the -- I'm not going to excuse the

7    answer obligation.  We'll file that on -- with the

8    administrative record on the 31st.

9            I don't want to come back and deal with the issue

10   of how many pages we need, so let's talk about that right

11   now.

12           Mr. Fink, how many pages do you think you need in

13   your opening motion for summary judgment?

14           MR. FINK:  Your Honor, this is the point at which I

15   defer to the wiser, Mr. Miller.

16           THE COURT:  It's because you know that what's

17   coming back, no matter what you answer is, my response is

18   going to be unpleasant and you would rather have that

19   directed toward Mr. Miller than yourself.

20           So, Mr. Miller, how many pages do you think you

21   need for your motion?

22           MR. MILLER:  Your Honor, we worked hard to craft a

23   brief that was 25 pages for one of the three substantive

24   claims.  I believe, 75 pages, so that we can devote the same

25   number pages to the other two substantive claims, would allow

1   us to fully brief the issue and provide all the facts

2   necessary.

3          MR. FINK:  And, Your Honor, to be clear, my fear

4   was not that Mr. Miller would have to be deal with the

5   rejection from you, my fear was that I would have to deal

6   with Mr. Miller after this call, if I didn't adequately ask

7   for enough pages.

8          THE COURT:  All right.  Mr. Daniel, what is your

9   belief on how many pages are necessary?

10          MR. DANIEL:  Your Honor, it's hard to say, without

11   knowing what's in the administrative record, but I do think

12   between 50 and 75 would be a reasonable range.

13          THE COURT:  Okay.  Sixty pages for the opening and

14   response briefs, and 20 pages for the reply.  That's way

15   longer than we usually do.

16          Now, while -- let me state the obvious here.  While

17   I'm giving you that many pages, there are no points to be

18   made for actually using them.  And a friendly reminder, when

19   I used to have your job -- I tell this story all the time --

20   it would kill me to slice even a single sentence because I

21   thought my work product was so damn brilliant that the court

22   would be deprived of my thinking.

23          Sitting on the other side, I can tell you that as a

24   human being, when you get to about page 40, you need to make

25   a Starbuck's run, recaffinate and keep going.  So while you

1    have these pages, your clients will be best served to the

2    extent you're able to be concise, punchy, and get right to

3    the point, and dumb it down for me, so that I can understand

4    it.  Okay.

5          So we'll get a short order entered with these

6    deadlines.  I'm looking forward to working with the fine

7    counsel on both sides of this case, and the interesting and

8    important issues here.

9          Mr. Fink.

10         MR. FINK:  Your Honor, I apologize, but I think

11   there may be something -- there's something I'm not clear

12   about and I want to make sure we are.

13         As I understand it, substantive briefs are due,

14   simultaneously, on June 20th.

15         THE COURT:  Yes.  The motions -- you can file

16   before then, if you want, but --

17         MR. FINK:  Right.

18         THE COURT:  -- it sounds like each side wants to

19   file an affirmative motion for summary judgment on their own

20   behalf.

21         MR. FINK:  Right, and those are limited to 60

22   pages.

23         THE COURT:  Right.

24         MR. FINK:  Responses are due on July 11th, and

25   those are limited to 20 pages?

| | |
|---|---|
| 1 | THE COURT:  I was actually thinking 60, but -- |
| 2 | MR. FINK:  I'm sorry.  Okay.  Okay. |
| 3 | THE COURT:  And then the replies are 20 pages, but |
| 4 | again -- |
| 5 | MR. FINK:  We will do our best.  We will do our |
| 6 | best to not use all the pages. |
| 7 | THE COURT:  Especially in the responses, because in |
| 8 | a case like this, what you end up with is the arguments are |
| 9 | meeting each other, you do not need in your responses to |
| 10 | repeat stuff you've already said in your opening motion. |
| 11 | This is a case where the responses, and I urge you strongly |
| 12 | to just say, we addressed this point in our opening motion |
| 13 | and we don't have anything new to say.  The responses should |
| 14 | really just be responding to arguments that the other guys |
| 15 | have made.  So please keep that in mind on the responses. |
| 16 | Okay. |
| 17 | MR. FINK:  Your Honor, if I may have the Court's |
| 18 | indulgence for a minute or less anecdote. |
| 19 | When I was first practicing and -- or actually I |
| 20 | was a few years into the practice, we finally had a computer |
| 21 | that would allow us to use alternative fonts.  And I was very |
| 22 | excited to tell my partner, Dan Cooper, who was much more |
| 23 | experienced than me.  And I said -- we were filing a brief in |
| 24 | the Court of Appeals, but I had some great news, if I used |
| 25 | New Times Roman font, I could fit like 40 percent more words |

1    on the page, and so in 20 pages, I could submit a lot more.

2              And his response to me was, David, you are an

3    idiot.

4              And I said, why do you say that?

5              He said, do you think those rules are to protect

6    you?  Those rules are to protect the poor judges who have to

7    read the nonsense that you send to them.  And if you send

8    them 40 percent more, you haven't done them a favor.

9              THE COURT:  Well, that's good advice.

10             MR. FINK:  Yep.  We will try, Your Honor.

11             THE COURT:  Okay.  Thank you very much guys.  I

12   look forward to working with you.  I appreciate your time

13   today.  See you later.

14             MR. FINK:  Thank you, Your Honor.

15             MR. DANIEL:  Thank you, Your Honor.

16             (Proceedings concluded at 11:22 a.m. )

17                              —   —   —

18

19

20

21

22

23

24

25

1                     *C E R T I F I C A T I O N*

2         I, Robert L. Smith, Official Court Reporter of the

3 United States District Court, Eastern District of Michigan,

4 appointed pursuant to the provisions of Title 28, United

5 States Code, Section 753, do hereby certify that the

6 foregoing pages comprise a full, true and correct transcript

7 taken in the matter of CITY OF DETROIT vs. UNITED STATES

8 DEPARTMENT OF COMMERCE, Case No. 24-10775, on Friday,

9 May 10, 2024.

10

11

12                     *s/Robert L. Smith*

                     Robert L. Smith, RPR, CSR 5098

13                      Federal Official Court Reporter

                     United States District Court

14                      Eastern District of Michigan

15

  Date:  05/20/2024

16 Detroit, Michigan

17

18

19

20

21

22

23

24

25