# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

THE CITY OF DETROIT,

        Plaintiff,

v.

UNITED STATES DEPARTMENT
OF COMMERCE, *et al.*,

        Defendants.

Case No. 2:24-cv-10775-MFL-APP
Hon. Matthew F. Leitman
Hon. Anthony P. Patti

## SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

STEPHEN M. ELLIOTT
Assistant Branch Director
Federal Programs Branch

STEPHEN M. PEZZI
Senior Trial Counsel
TAYLOR PITZ
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

## INTRODUCTION

At the March 12, 2026 summary judgment hearing in this case, the Court ordered Defendants to provide a supplemental submission addressing whether: (1) challenges to the Vintage 2023 population estimates or subsequent estimates are pleaded in the complaint; and (2) whether the City of Detroit is entitled to forward-looking injunctive relief in this case. *See* Summ. J. Hearing Tr. at 132:20-25; 133:1-15, ECF No. 62 ("SJ Tr."). Consistent with Defendants' argument at the summary judgment hearing, their answer to both questions is no.

## ARGUMENT

### I. The Vintage 2023 estimates and any future estimates are not before the Court.

**a.** As to the first question posed by the Court, the answer is clear: neither the Vintage 2023 estimates, nor any subsequent estimates, are challenged in Detroit's complaint. The complaint explicitly focuses on "Detroit's Challenge to the 2021 and 2022 Population Estimates," Compl. ¶¶ 53-71, ECF No. 1, and alleges that "[t]he City and its residents are harmed by the loss of federal funding caused by the *2021 and 2022 population estimates'* undercount of Detroit's population and housing units," *id.* ¶ 121 (emphasis added). For years, Defendants have relied on that limitation in litigating this case and in developing the record on Article III standing. *See, e.g.*, Defs.' Mot. for Summ. J. at 9, ECF No. 32 ("Defs.' Mot.") ("The Vintage 2023 estimates are not before this Court."); Defs.' Renewed Mot. for Summ. J. at 16-17, ECF No. 59 ("As a reminder, this lawsuit challenges the Vintage 2021 and Vintage 2022 population estimates for the City of Detroit . . . . Those are the only two years for which Detroit pursued

1

administrative remedies and now seeks relief in this suit . . . . The Vintage 2023 estimates (released in 2024) . . . were not the target of any administrative challenge, and are not the basis for this lawsuit (which was filed before they were released)[.]'").

Despite repeatedly specifying that it challenges the 2022 and 2021 estimates, nowhere does Detroit's complaint challenge the Vintage 2023 estimates or purport to bring a generic challenge to Detroit's population estimates going forward. *See generally* Compl. Nor could it. Among other reasons, unlike the Vintage 2022 estimates, Detroit did not administratively challenge the Vintage 2023 estimates (or the 2024 estimates, for that matter). *See* Ex. A, Decl. of Christine Hartley ¶¶ 4-7. Although Detroit initially filed an administrative challenge, it ultimately withdrew that challenge. *See id.*[1] Accordingly, if a challenge to the 2023 estimates had appeared in the complaint, Defendants might have argued that challenge was not properly before this Court, because Detroit did not exhaust its administrative remedies. *See, e.g.*, *McKart v. United States*, 395 U.S. 185, 193 (1969) ("The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law," and "provides that no one is entitled to judicial review for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (citation modified)); *compare Darby v. Cisneros*, 509 U.S. 137 (1993). But because Detroit *did* unquestionably exhaust administrative procedures for the Vintage 2022 estimates (including their revisions to

---

[1] As the Hartley Declaration attached to this filing makes clear, contrary to Detroit's argument at the recent hearing, Detroit did not pursue an administrative challenge to the Vintage 2023 estimates. *See* SJ Tr. at 48:14-15 ("Now, we did appeal 2023, absolutely, we did appeal 2023, and they denied it.").

the Vintage 2021 estimates), Defendants never raised that argument and the parties never briefed it.

At the summary judgment hearing, the Court suggested that a challenge to the Vintage 2023 estimates and subsequent estimates might be presented by way of the complaint's prayer for relief. *See* SJ Tr. at 13:15-20. That is not the case. The complaint asks the Court to "[h]old unlawful and set aside the Bureau's *application* of the County Control rule." Compl. at 43 (emphasis added). By its plain language, then, the complaint does not bring a freestanding facial challenge to the county control method in the abstract, nor the 2023 estimates, nor any other subsequent estimate. Instead, that language is best read as a challenge to the Bureau's "application of the County Control" method *to the 2022 and 2021 population estimates*, which are the estimates actually challenged in the complaint. And although Detroit could have tried to challenge subsequent estimates via a supplemental pleading, *see* Fed. R. Civ. P. 15(d) (contemplating "a supplemental pleading" to challenge an "event that happened after the date of the pleading to be supplemented"), it never did.

**b.** Even if the Court were inclined to interpret Detroit's complaint differently, that interpretation would raise a separate problem. The Administrative Procedure Act ("APA") "authorizes judicial review of agency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court." *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005) (citation modified). Agency action for APA purposes is limited to the set of "circumscribed, discrete agency actions" delineated in 5 U.S.C. § 551(13): "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Norton v. S. Utah Wilderness All.*, 542 U.S.

3

55, 62 (2004) (emphasis omitted). Agency action must also be final. "As a general matter, two conditions must be satisfied for agency action to be 'final.'" *Bennett v. Spear*, 520 U.S. 154, 177 (1997). "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* at 177-78 (citation omitted). "And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (citation modified).

As Defendants argued at the hearing, while under the APA Detroit may be able to challenge the Vintage 2021 and 2022 estimates, to the extent that its prayer for relief attempts to do so, it cannot challenge the county control method in the abstract, untethered from reviewable final agency action. *See, e.g.,* SJ Tr. at 13:21-25; 14:1-2, 16:18-20. Again, Detroit's first problem is a pleading one: its complaint does not identify a discrete final agency action by which Detroit could challenge the county control method standing alone. Detroit identifies as relevant agency actions only the Vintage 2021 and 2022 estimates, and a document describing the methodology the Census Bureau used to produce the 2022 estimates. *See* Ex. E to Compl., *Methodology for the Subcounty Total Resident Population Estimates (Vintage 2022): April 1, 2020 to July 1, 2022*, ECF No. 1-5. That document, however, does not mandate that the Census Bureau apply the county control method for all population estimates moving forward—it simply describes the methodology that was used to prepare the 2022 estimates. *See id.*

Even setting aside Detroit's pleading issue, it is far from clear whether any reviewable final agency action exists with respect to the county control method in the abstract—an issue that the parties would surely have briefed had Detroit's complaint

been drafted differently. There is no Census Bureau regulation mandating that the county control method be used in subcounty population estimates. *See Norton*, 415 F.3d at 8, 14-17 (holding there was no final agency action where suit challenged a survey methodology that was not binding). And even if Detroit had identified some specific policy document describing the county control method, that alone might not constitute reviewable final agency action. *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251-52 (D.C. Cir. 2014) ("An agency action that merely explains how the agency will enforce a statute or regulation . . . is a general statement of policy" that is not final agency action subject to pre-enforcement review); *see also, e.g.*, *Familias Unidas por la Justicia, AFL-CIO v. U.S. Dep't of Labor*, 2025 WL 388406, at *3, *6 (W.D. Wash. Feb. 4, 2025) (concluding "DOL has not taken final agency action by approving [a] survey method"). A methodology, standing alone, may lack the "actual legal effect," *McCarthy*, 758 F.3d at 252, sufficient for finality—particularly if the application of that methodology may not always cause injury. *See* Defs.' Mot. at 19 n.1 ("County control can result either in an increase or a decrease of a city's population estimate."). Thus, had Detroit actually tried to challenge the county control methodology in the abstract, the Court would have had to consider whether that sort of methodology qualifies as final agency action—a question that was *not* raised by Detroit's procedurally proper challenge to the Vintage 2022 and 2021 population estimates, and that the parties have therefore not briefed.

**II.    Where a plaintiff prevails on an arbitrary-and-capricious claim under the APA, the ordinary remedy is to "set aside" the unlawful agency action.**

As to the Court's second question, under the APA, if a court finds agency action "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,"

it "shall" "hold unlawful and set aside [that] agency action." 5 U.S.C. § 706(2)(A); *United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring) (explaining § 706(2) of the APA "authorizes a reviewing court to 'set aside' agency action" and interpreting this language to require that a reviewing court "disregard" an unlawful agency action with respect to the parties before it); *see also Humane Society of U.S. v. Zinke*, 865 F.3d 585, 614 (D.C. Cir. 2017) ("A common remedy when we find a rule invalid is to vacate."). Because, as described above, the APA permits only review of *final* agency action, that typically means that relief is retrospective, rather than prospective—in other words, in the ordinary course, a reviewing court holds unlawful and sets aside an action that has already occurred, rather than one that may occur in the future. *See, e.g., Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022) (explaining "vacatur does nothing but re-establish the status quo absent the unlawful agency action," and "neither compels nor restrains further agency decision-making"). Here, for instance, if the Court were to rule against Defendants on the merits of Detroit's APA claim, the proper remedy would be for the Court to hold unlawful and set aside the application of the country control method to Detroit's Vintage 2021 and 2022 estimates.

To be clear, as a practical matter, that does not mean that "setting aside" agency action can never have a forward-looking effect. For instance, when a court holds unlawful and sets aside a legislative rule of general applicability, an agency cannot rely upon that rule moving forward.[2] But as explained above, no such rule (even if one

---

[2] In light of *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), however, the government's position remains that any remedy—even as to a legislative rule of general applicability, and including under the APA—should be party-specific.

exists) is challenged in Detroit's complaint. Accordingly, any relief here would set aside the use of the county control method in Detroit's population estimates for Vintage 2022 and 2021.

Of course, that this is how remedies *typically* work under the APA did not prevent Detroit from also seeking a permanent injunction. Litigants sometimes take that approach, even in APA case. But "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). And it is a plaintiff's burden to demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010). In APA cases in particular, "[t]he Supreme Court has cautioned that a district court vacating an agency action under the APA should not issue an injunction unless doing so would 'have [a] meaningful practical effect independent of its vacatur.'" *O.A. v. Trump*, 404 F. Supp. 3d 109, 153-54 (D.D.C. 2019) (quoting *Monsanto*, 561 U.S. at 165). Detroit has neither requested injunctive relief in its complaint, nor attempted to carry its would-be burden to establish any of the above. There is thus no basis for this Court to enter forward-looking injunctive relief now.

## CONCLUSION

For these reasons, (1) neither the Vintage 2023 population estimates, nor any subsequent estimates, are currently before the Court; and (2) there is no basis to depart

7

from the typical APA remedy of party-specific vacatur of the final agency action that is challenged in the complaint. Regardless, for all the reasons that Defendants have set forth in their prior briefing and at oral argument, (1) Detroit has failed to carry its burden to show Article III standing; and (2) even if Detroit had standing, the Court should enter summary judgment for Defendants on both remaining claims.

Date: March 26, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

STEPHEN M. ELLIOTT
Assistant Branch Director
Federal Programs Branch

/s/ Taylor Pitz
STEPHEN M. PEZZI
 Senior Trial Counsel
TAYLOR PITZ
 Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov

*Counsel for Defendants*

9